**Law Office of Mohammed Gangat**  675 3rd Ave, Ste 1810, NY, NY 10017
(718) 669-0714  mgangat@gangatpllc.com

**April 1, 2024**

<u>via ECF</u>
Hon. Judge John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street,
New York, NY 10007

       <u>**Re:**</u> *Erick Sanchez v. 514 Hudson Grocery & Deli Corp, et. al.*
          <u>**Case No. 1:23-cv-09838-JGK**</u>

To the Honorable Judge Koeltl:

  I represent plaintiff Erick Sanchez ("Plaintiff") in the above action. I am seeking your Honor's approval of the settlement of this action, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Counsel for defendants 514 Hudson Grocery & Deli Corp, Mina Kandil, and Angie Tamer ("Defendants") has reviewed and approved this letter.

  This action arises under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid overtime and other amounts due Plaintiff as a result of the Defendants' alleged violations of these wage-and-hour laws, including failure to pay overtime, failure to pay spread of hours (i.e., an additional hour of pay for each workday in excess of ten hours per day), and failure to provide wage notices and accurate wage statements. Defendants deny the allegations in Plaintiff's complaint.

  The parties, alongside their attorneys have negotiated a compromise figure to resolve all claims, including attorneys' fees and costs, and the parties memorialized this in a written agreement to resolve this Action (the "Agreement") that is now being submitted to Your Honor for approval. A copy of the Agreement is attached hereto as Exhibit A. The negotiations at all times were between experienced counsel on both sides, negotiating at arms-length and in good faith.

    **I.** **Legal Standard**

  As the Court is aware, when Fair Labor Standards Act ("FLSA") claims are settled, the Second Circuit requires the Court to review and scrutinize settlement agreements to ensure fairness. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); *see also Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

  The Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement. It did, however, identify 'red-flag issues', such as if an agreement contains a

Hon. Judge John G. Koeltl
April 1, 2024
Page 2 of 5

confidentiality clause; the scope of the release and worries surrounding general releases; and counsel fees exceeding 40% of the settlement payment. *Cheeks*, 796 F.3d at 206.

This agreement contains a release limited to wage and hour claims and discrimination claims which were alleged in the Complaint. This agreement contains no requirement for confidentiality. The attorney's fees are the usual and customary 33.33% of the net settlement amount after expenses are deducted from the gross settlement. Thus, none of the red flags from *Cheeks* are present here.

The *Wolinsky* case set forth several factors to resolve "[t]he ultimate question" of "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Wolinsky*, 900 F.Supp.2d at 335.

## II. Analysis of the *Wolinsky* Factors

The first factor is "the plaintiff's range of possible recovery." *Wolinsky*, 900 F.Supp.2d at 335 (citations omitted). Here, Plaintiff calculated damages as follows.

Plaintiff worked at two delis both of which were located in New York City. The minimum wage in effect at the time was $15.00 per hour for all employees in New York City. Plaintiff calculated Unpaid Overtime Under FLSA and NYLL and Unpaid Minimum Wage Under NYLL as follows:

- Employment Period: from end of July 2022 to February 2023.
- Rates Paid: $12.00 (initial), $13.00 (after 10 days), $13.50 (February/March 2023).
- Regular schedule: 6 days a week, 6 AM to 6 PM. But towards the end of the employment, the last few weeks his hours were reduced.
- Weekly hours worked: 72 hours (12 hours/day × 6 days/week).
- Regular hours per week: 40 hours.
- Overtime hours per week: 32 hours (72 total hours - 40 regular hours).

He was paid an average of $13 per hour for all hours. He should have been paid $15 for regular hours and overtime pay rate at $22.50/hour (time and one-half). What Erick was paid:

- For 40 regular hours at $13/hour: $520
- For 32 overtime hours at $13/hour: $416
- Total actual pay per week: $936

What Erick should have been paid:

- For 40 regular hours at $15/hour: $600

- For 32 overtime hours at $22.50/hour: $720
- Total should have been paid per week: $1320

The difference between what Erick was paid and what he should have been paid per week is $384. Over the course of the employment the figure rises to approximately $11,000.00, and a little higher or lower depending on the precise number of workweeks Plaintiff is credited for.

Under the agreement Plaintiff will receive about the amount of his calculated unpaid overtime and will forgo all other potential damages. The parties submit that this is a reasonable recovery given the potential that Defendants prevail on their defenses in this action, or that Plaintiff is not able to successfully recover any judgment it may receive. Plaintiff in particular was concerned about the latter when choosing to accept the settlement.

The second factor is "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d at 335 (quotations & citations omitted). This is a significant factor for settling. Plaintiff prefers the security of getting money now. Plaintiff considers the settlement amount to be a favorable recovery. Plaintiff will be able to obtain a significant recovery, without confronting the risks of trial. Plaintiff's circumstances are such that it is in their best interest to receive an expedient settlement payment, rather than further litigation and trial, and risk the ability to collect a judgment. Indeed, the risk of winning but Defendants not being able to pay a judgment is of significant concern to Plaintiff.

Defendants want to avoid the time and expense of defending this claim. Although Defendants dispute the factual allegations, Defendants believe that the settlement is fair and reasonable because it will enable the Parties to avoid further anticipated burdens and expenses, including discovery costs, motion practice, trial, and attorneys' fees, which would be significant if the case were to go to trial. Additionally, the Defendants have considered the fee shifting nature of the FLSA for attorneys' fees if Plaintiffs were to prevail, which could result in a large fee award, even if damages were minimal. Furthermore, the Defendants believe the proposed settlement is fair and reasonable because the settlement was negotiated at arms-length by competent counsel.

As to the third factor, which is "the seriousness of the litigation risks faced by the parties," *Wolinsky*, 900 F.Supp.2d at 335 (citations omitted), Plaintiffs decided to enter into this settlement after a thorough investigation into Defendant's ability to pay and concluding that there is a serious risk that if this litigation were brought to its ultimate conclusion, Defendants would not be able to pay any judgment issued against them.

The fourth factor is "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel," *Wolinsky*, 900 F.Supp.2d at 335(quotations & citations

omitted). This agreement is fully the product of arm's length bargaining between experienced counsel. The settlement is reasonable under all of the *Wolinsky* factors.

### III. Reasonable Attorney's Fee

The attorney's fee is also reasonable. Employees who are defrauded of wages typically cannot afford reasonable hourly rates, and many sole practitioners are unwilling to risk their time and efforts to vindicate the rights of disenfranchised employees. The Plaintiff in this matter could not afford to pay usual and customary hourly fees to litigate this matter on his behalf. Due to these circumstances, Plaintiff's counsel represented Plaintiffs on a full contingency. This is consistent with the fee-shifting policy incorporated into the FLSA.

Some courts defer to the contract between the plaintiff and their counsel. *Mares v. Dal Chon Kim*, 2016 U.S. Dist. LEXIS 96723, at *5 (S.D.N.Y. 2016) ("[T]he purpose of the FLSA is to regulate the relationship between an employee and his employer and to protect the employee for overreaching by the employer . . . . I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney"). The latter view was espoused by the United States Supreme Court in *Venegas v. Mitchell*, 495 U.S. 82 (1990), where the Court construed 42 U.S.C. § 1988 and held that the fee-shifting statute:

> controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order. [The statute] itself does not interfere with the enforceability of a contingent-fee contract.

*Mitchell*, 495 U.S. at 90.

Similarly, in *Cheeks*, the Second Circuit Court of Appeals noted that the duty to pay wages falls upon the employer -- not the employee's counsel who labored for an agreed-upon fee. In *Cheeks*, the Second Circuit expressly noted "the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207. *Cheeks* only requires a court to review "adequate documentation" of the fee, which is submitted herein, and a review of the settlement amount that the employer is paying to the employees. *Id.* at 206. *Cheeks* is in full accord with *Mitchell*, where the Supreme Court limited its view to what the "losing defendant must pay," and approved the plaintiff's counsel's fee based upon the private contract between the parties,

without intruding into the relationship between plaintiff and counsel. *See Mitchell*, 495 U.S. at 89.

A one-third contingency fee is "commonly accepted in the Second Circuit in FLSA cases." *Najera v. Royal Bedding Co., LLC*, 2015 U.S. Dist. LEXIS 71877, at *7 (E.D.N.Y. June 3, 2015) (collecting cases). *See, e.g. Gaspar v. Pers. Touch Moving, Inc.*, 2015 U.S. Dist. LEXIS 162243, at *5 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069, at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). However, one-third is not the "'maximum fee percentage' that counsel may be awarded." *Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020). According to the Second Circuit, "[e]ven if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award." *Id.*

Here, of the total $15,800 settlement amount, the attorney's fee is $5,000.00, which is 33.33% of the settlement amount after accounting for the $800 of the settlement amount that is going to expenses. This is in line with the commonly awarded 33.33% contingency fee in FLSA cases. Plaintiff notes that the $800 in expenses consist of $402 in court filing fees and $398 in process server expenses.

In view of the foregoing, the Parties jointly and respectfully request that the Court approve the Settlement Agreement and dismiss this matter with prejudice.

The amount is reasonable given the practical factors of litigation risk, time and expense. In reaching the figure, the parties and their attorneys had multiple conversations and attended a court-ordered mediation resulting in the parties reaching a compromise. The settlement amount constitutes a substantial recovery of the plaintiff's FLSA damages, including his liquidated damages, without the need for the case to be tried to a verdict.

In all, the Agreement is in line with the mandate from *Cheeks* and satisfied the *Wolinsky* factors. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement and ordering the Clerk of the Court to close this case. We thank the Court for its time and attention to this matter.

Respectfully Submitted,
Law Office of Mohammed Gangat

_____
Mohammed Gangat, Esq.